Good morning, Your Honors. May it please the Court, Sevag Demirjian for the Plaintiff-Appellant Raul Caiz. I'd like to reserve two minutes for my reply. The name is Caiz? Caiz, yes. Thank you. So this appeal is based on one simple fact, that the trademark mastermind is inherently distinctive. Specifically, it is a suggestive mark and not a descriptive mark in the class of goods and services in which it was registered, namely, live musical performances and musical recordings. The question of whether a mark is suggestive or descriptive is a very difficult one to answer. There's been many cases over this. Luckily, we have a case right here from the Ninth Circuit, Lohody v. Veracek, that provides guidance and should be controlling in this case to answer this question, is the trademark suggestive or is descriptive. Even District Court Judge Poulou noted in his order on the motion for summary judgment that we're appealing, that a determination of whether a mark is suggestive or descriptive is not as clear or objective as one would think. So the Lohody v. Veracek case instructs us that the best authority to listen to on whether a mark is suggestive or descriptive is the United States Patent and Trademark Office. They have the experience and the knowledge necessary to make this determination. And we feel that the United States Patent and Trademark Office evidence was not given the proper weight by Judge Liu in making his decision on summary judgment. The United States Patent and Trademark Office, a registration from them alone is sometimes enough to show that a mark is distinctive. It's a presumption, isn't it? It is a presumption. It's a rebuttable presumption. And in order to rebut the presumption, you need a preponderance of the evidence. And we feel that the evidence was not given the proper weight. We also feel strongly that the evidence should have been reviewed by a jury and not summarily reviewed by a judge and had the entire trademark registration cancelled completely in what we feel was a draconian measure when a more limited measure could have been taken. Aside from having a jury review all the facts and evidence that were submitted, especially the facts and the evidence that was submitted by the defendants, which we feel strongly a jury should have had the chance to review. When you say that, that's because in your view there was a material question of fact. Yes. With regard to whether it was distinctive or suggestive. Definitely. We feel the evidence that was used in order to make the determination that the judge ruled that it was descriptive and not suggestive, we feel that all that evidence shows tribal issues of material fact. In fact... Consumer survey. There was no survey in this case, unfortunately. My client is an independent artist. Those consumer surveys cost a ridiculous amount of money. But neither party had a consumer survey. No, neither party had a survey. So we're left with a dictionary. So we're left with... And we're left with the imagination test. Yes. And we're left with, and I don't want to speak for my colleagues, but a mastermind, I'm supposed to get to wrap. This is a hard sell for me. I mean, it just does not spring to mind. I think of a board game, in all honesty. I agree. And in fact, the board game was an issue during the trademark registration process. The application that my client filed, he's been using this trademark since 1999. He filed an application for registration in 2005. It wasn't registered until 2013. Most of that time was spent dealing with the board game registrants. And so the registration... Original. It may be generational. Yeah. That's what I think about. And so we're left with the dictionary. Yes. So the dictionary is one of the main pieces of evidence that needs to be evaluated by a jury, we believe. The dictionary definition that defendants submitted was one out of many dictionaries, and it happened to be the only one that we were able to find that had a sample use of mastermind in the musical connotation. The dictionary definitions that we submitted, which were multiple, none of them even mentioned music. But it was that one which of these dictionary definitions should be controlled. None of the dictionaries were specialty dictionaries. No, we're talking about the most famous dictionaries on the planet. The Oxford, the Merriam-Webster, dictionary.com, all the... Limit the universe to music or to any category. It's just the Oxford. No, it's just the Oxford. The one dictionary definition defendants submitted happened to have one sample usage of mastermind, which was in reference to music. All the other criminal mastermind, political mastermind, those are the types of samples all the other dictionary definitions use. And even the Oxford did it. Just the one of the samples the Oxford dictionary had was a musical sample. Was that a material question of fact? The fact that the dictionaries didn't all agree? I believe that it is, and I believe that a jury needs to decide if that one sample from the one which we feel it's not even close to being descriptive. So that's the one factor, the dictionaries. Another major factor... Dictionaries, counsel, I mean, with respect, the dictionaries never agree. I mean, even any dictionary is going to have two or three definitions. So I'm not sure this is going to be your strongest argument. I mean, I have a problem with that argument, I think. Okay. Well, I agree, and I feel a jury needs to review that. And is it the primary test or rely on the imagination test? So the imagination test is one of the most primary tests. And that was, I believe, the case that set that test. So Zambando Entertainment versus Falls Media, a case that was cited by the defendants, shows that there's two tests. The imagination test from Rudolph versus Realsys Inc. And then there's the Rodeo Collection versus West Seventh case that says that other, the competitors in that industry need to use the term will also be evidence to show that a mark is descriptive. We also obviously feel that competitors don't need to use this term in live musical performances and audio recordings. But that gets us to the second major piece of evidence that defendants relied on and the judge cited to in his decision. That was the MySpace evidence. So the defendants found a bunch of pages on MySpace that included the word mastermind. This evidence needs to properly be scrutinized by a jury to review the authenticity of this evidence and the relevance of this evidence. There was, I believe, dozens of pages that included mastermind, but some of them are completely irrelevant. Some of them are old pages and no longer exist. I don't know how many of those, I would argue, maybe only one or two of them are relevant to this case at all in terms of being a source identifying usage of mastermind, which is another big problem. Most of the evidence submitted by not used as a trademark. My client and defendant's client were the ones that used this mark as a trademark. Only some of those MySpace pages that were found also used mastermind as a trademark. And as we argued, MySpace is an old website. Most people don't even know it still exists. My client was not policing it for trademark infringement. Had he been, he would have sent cease and desist letters to those MySpace page owners that were using mastermind as a trademark, just as he did to other potential infringers that he was made aware of, such as the defendants we also sent a cease and desist letter to. So we feel that just like in the E.T. Brown drug versus co-care products case that says the determination of what category a trademark falls in, descriptive or suggestive or otherwise arbitrary, it's a factual question for the jury, which is what the holding in that case said. There are tribal issues of material fact here. We feel that my as a lot of the evidence is very factual. Another element I want to touch upon is we need to look at examples from the past of the U.S. Patent and Trademark Office of how they've treated the mastermind trademark. As I mentioned before, they're the best authority to look to. There were five previous mastermind applications for trademark registrations having to do with music in the same class as my client was registered in. Many of them were reviewed by different examiners in great detail, and many rejections were brought up in all these applications, some for descriptiveness of other terms used in the application, such as mastermind productions. They required a disclaimer of productions because it's descriptive. Not one of those applications, and including my client's application, ever once brought up an issue that the term mastermind is descriptive. The first time this issue has ever been brought up is by defendants in this case who found a way to shoehorn the descriptive label onto this mark by showing this evidence that I believe a jury needs to review. As I mentioned, my client is an independent artist with limited resources to try this case. I believe that the ruling from the judge is a terrible ruling for all independent artists that have limited resources that spend the time and money to hire an attorney to get a trademark registration that they believe is the right way to conduct their business and to protect themselves, only later to find out that that protection wasn't worth much when a judge cancels the entire registration, which we feel was a drastic measure to take. He could have limited the class descriptions. He maybe could have canceled one of the classes. Instead, he found somehow that mastermind was descriptive not just for one of the classes, live musical performances, but also somehow descriptive of musical recordings as well, which is even more difficult to do. It's descriptive of two separate classes. One of the other examples I want to look at is other cases that have determined is a mark suggestive or is it descriptive. Some of the most famous cases that show suggestive marks are the mark wet ones for moist towelettes. It seems descriptive to me, but that was found to be suggestive. Whiteout for corrective fluid seems descriptive. That was even found to be suggestive. My personal favorite. Yeah. I mean, this is a fun case in terms of it's like a game, like the mastermind game, trying to figure out what's suggestive, what's descriptive. Unfortunately, it's not a game to my client, who's an independent artist, who's had his trademark canceled. Years of his work into trying to produce records has been destroyed by the reverse confusion caused by defendants. My client, his career has basically ended as a musical artist because of this case. He's had to refocus from his art to this case, and it's been years now that this has been pending. But moving on, some other examples of suggestive marks, extend your beauty for fake eyelashes. Sounds obvious to me. Eyelashes want to be extended. It has to do with beauty, but the court held in that case that if you look up the dictionary definitions of extend and beauty, it doesn't mention eyelashes. This is the standard that they set for finding if it's descriptive. So none of these were found to be descriptive. They were all suggestive, but then suddenly mastermind for musical recordings and live entertainment is somehow descriptive. I mean, common sense needs to prevail here. That just doesn't make any sense to me. Some examples from cases where descriptive marks are found is Bank of America for a bank. Now, to me, that sounds even generic, even more than descriptive, but that was found to be descriptive. We have staples for office supplies, Kentucky Fried Chicken for chicken, Holiday Inn for hotels. These are extremely obvious what the products, the goods and services being offered under these marks are, and these are marks that are considered descriptive. Finding mastermind descriptive for musical performances, it just doesn't make any sense to me. And the slim evidence that was relied upon, I know defendants called it unrefuted evidence that they submitted, but it was all refuted. We refuted every piece of evidence they submitted in our separate statement, but we never really got a full, I believe a jury needs to have a chance to review all that evidence and all those facts to see how relevant is all this information, all the evidence they submitted and how, and is it evidence that's true and real? We never got a chance to attack the evidence in front of a jury that needs to come to these. Yes, I'm going to reserve time for rebuttal. Thank you. Thank you for your argument. Good morning, your honors. The federal trademark law does not countenance a monopoly over a descriptive term such as mastermind that does not acquire secondary meaning. And I think the record that is before us does not evidence that established that this was a suggestive mark. It wasn't merely the dictionary definition that the court relied on in granting summary judgment and canceling the mark. It was also the myriad of uses of the term mastermind as exhibited in the record. Can I ask, forgive me for interrupting you, you've mentioned the dictionary test and I don't think I've ever seen one of these cases didn't start with the dictionary test and then moves on. So that was entirely typical. And then you just mentioned sort of what I think of as the third prong, the court looked to whether this was in ubiquitous use. But what about the middle? What about the imagination test? That's the one that I think we use most often and that's the one I really struggle with here. It's not just that I'm limited to my own experience, although we don't have a we've had other cases. I had a case involving luxury watches. I don't own a luxury watch. I think we understand we need to take ourselves out of our own experience. And certainly this case requires me to do that. But I still can't get from mastermind to this product. And it is a rebuttable presumption. So what rebutted the presumption? Well, I think what rebutted the presumption was the considerable record that is out there of wrappers using the term mastermind as a laudatory term. So you're really skipping down to, is that your strongest argument? You think that this term is used very frequently? I think it is a term that is particularly within the industry is used as a laudatory term. Even the Lahode versus Verochek case that counsel cites the court to talks about the need for the consumer within the context of those goods to identify the usage of that name associated with those goods. And there's no... So that, forgive me for interrupting, but I'm just trying to, you're ahead of me. I just want to make sure you are indeed focusing on that as your strongest argument as opposed to the Well, I think the strongest argument is just that the term itself is distinctive. I think the court raises a question about the imagination test. And I think that the corollary of that really is the mental leap test as it's also characterized. And one does not find a mental leap in looking at the word mastermind. And there's no evidence to show that a consumer within the context of the rap genre of music would make a mental leap to associate that term with this artist's goods that are in the marketplace. And is that because the term is used frequently in that genre? Is that your argument? I think it's twofold. I think it's the term itself, mastermind, if you look at the dictionary definition, any one of them that's before the court. I think it's also the widespread use, which I don't think was contested with any material facts. I don't understand how the dictionary definitions other than the Oxford help you. Well, I think that that was just one of the grounds that the court relied upon. I think additionally, the court... But you just said dictionaries plural helped your argument. I don't think that the, obviously the Oxford dictionary, some of the dictionaries have different definitions, but I think that the fact that this artist has used it, as we noted, as a signature and not as a source identifier, which is essential for trademark law. This is not something that he was able to tie to his music and his goods as a source identifier. And I think by virtue of doing that, when you have a name like mastermind that is not associated with the goods, but is used almost as a signature, if you will, and there's no material evidence submitted otherwise, I think that that suffices to establish that the court had a valid basis for determining distinctiveness in this context. I don't know if that answers the particular... Nothing to do with dictionaries, but that's fine. Well, the dictionary, you're right. Some dictionary definitions are better than others, but I don't think that escapes... There's only one that uses music as an example, and it was simply just, in my reading of it, illustrated example. It wasn't a definition. Well, even if you take the most favorable definition to the other side, even if we didn't proffer the Oxford dictionary, I think the result would be the same, Your Honor. I think that what you would have is a definition that is still descriptive. This is a rapper who's using the term in a laudatory sense in order to describe his skill set, not in order to use it as an identifier associated with the goods that are being marketed and sold to rap consumers. I have a hard time with this part of the brief. Yes. Because I think you're arguing two things, but I want to be corrected if I'm wrong. Sometimes, I think you're arguing that he uses it as a signature. I am the mastermind. Sometimes, I think you're saying he uses it as an adjective, as you said, as a laudatory term. And then I think he's arguing that the question is whether we leap to the product. I think that he claims he's using it as a noun. If we look to his reply brief, page 11 in particular, they reference several uses of the term mastermind. I think this is a good example of, and it gets into some grammar issues here, but, and I quote from the brief and the reply, it says, quoting page 11, their examples included, quote, the masterminds, G, the mastermind from Chicago, the Brooklyn mastermind, legendary mastermind, DJ Miles, the music mastermind. It goes on to say, all of these provided examples clearly use the term mastermind as an adjective. Well, that's just flat wrong. Each of those are used as a noun. And that's just basic grammar. So the test is, I agree with you. So the test is, if we go back to the imagination test for a second, when I hear mastermind, do I leap to the source, the product? And you're arguing something different. I appreciate that. And we've talked about that, but you're also making two other arguments. And one is that they're using the term not to refer to their product, but to either as a signature or as a laudatory term. Is that right? That is. And that's a secondary argument. I mean, issued a ruling that is on solid footing with respect to this being a distinctive mark. And that's not the end of the analysis. They have to then establish secondary meaning. And there's a complete absence of any showing of secondary meaning. You need a descriptive mark. For a descriptive mark, yes. And if we look at the entrepreneur media versus Smith case, I think that's really controlling here. And that's a case that this court issued back in 2002. And we had evidence of a mark that was much stronger, where EMI had published for many years, and at much expense, a magazine with the title entrepreneur, which was merely reflective of the publication and the audience and consumers that would be reading that publication. And I think that case talks about marks that are descriptive. And that's a good example of descriptive mark for which one has to establish secondary meaning. And you can find a wide or fair degree of latitude with respect to dictionary definitions of entrepreneur. But I think still, you need to establish that there is secondary meaning. And there was no discussion from the appellants about the lack of secondary meaning, because there is none in this context. Where do we find the clearest direction for what it takes to overcome the presumption that comes with this registered mark? Well, I mean, I think, for example, if you look at the entrepreneur case, that was an incontestable mark. And after so many years, a mark can become incontestable. This is not one of them. This is a rebuttable presumption. And I think that the dictionary definition, along with all of the usage out there, and the lack of any material facts to contest that people are using it in this laudatory, descriptive nature, including some of the this is a descriptive mark and not a suggestive one. One doesn't make the mental leap or the imagination doesn't go from hearing the term mastermind and then suddenly thinking, boy, that really sparks my imagination to think, you know, that's got to be the music that this artist is selling. It's not a mental leap that one can intellectually go to without engaging in mental gymnastics. And it's just not there. Is there a place, authority you want to cite where you think we're given direction about the quantum of evidence it takes to overcome the presumption here? I think the court's standard statement of the law within the order itself suffices under Rule 56 for purposes of the analysis. And I think that's... I've got the order. If that's what you want to refer to, just in case you wanted to call... There's not a single case. I think the court cites to a number of cases for that basic principle, but there's no detailed discussion of that concept. And so I think that really takes us to the lack of any contest of any material facts by the appellant with respect to establishing that there is any secondary meaning for what is a descriptive mark. The lack of such evidence, the lack of any argument of such evidence, I think limits us to trying to understand how appellee can, on this record, establish that its mark is suggested, which does not require secondary meaning. And again, that comes back to the lack of any ability to use one's imagination to establish that these goods are in fact associated with the term mastermind. And I think that because the record is lacking in that regard with respect to the evidence that was proffered by the plaintiff, I think that the district court was grounded in its ability to establish the lack of any material or genuine issue of dispute in issuing its ruling. And I think it's a sound decision for that reason. I'm happy to answer any additional questions. Thank you. Thank you so much. Thank you for allowing me a reply. I'll be pretty brief. I want to touch on some of the points that were raised. First of all, defendants continue to bring up secondary meaning. We've never once brought up that we can establish secondary meaning. It's a very difficult, expensive thing to prove. I know his client can prove secondary meaning because he's a big, rich, successful rap artist. My client is not. He does have a rap career in his own way, but he's not at the level where any secondary meaning can be established, unfortunately. We've never once even tried to argue that. So second, I'm glad you brought up the entrepreneur versus Smith case because in that case, they say that summary judgment is disfavored in these types of trademark cases. And we think that that should be controlling and we should listen to that. And it also says in that case that it asks, does this mark need to be used by other competitors? Because if it does, then that's one piece of evidence to show that it may be descriptive. And we believe that that question is a factual dispute that a jury needs to answer and not something that is proper for summary judgment. The third point I want to bring up is he mentioned laudatory terms and the case Estee Lauder versus The Gap that was referenced in Plaintiff's Brief says that self-laudatory terms, which is what he's claiming mastermind is for my client, they're generally suggestive. And this is what the court ruled in the Estee Lauder versus The Gap case. And then moving to my fourth point that defendants counsel mentioned that the evidence relied on showed a myriad of uses of lyrics. Any word in the English language you Google these days in lyrics, you're going to come with thousands of hits. Of course you are. We're only trying to focus on mastermind as used as a source identifying trademark, not in lyrics and not as an adjective. And finally, I just want to reiterate that for the imagination test, we do believe that that's the most important test here. And you definitely need some imagination to get from mastermind to figuring out that it's live music performances and or musical recordings in order to figure out what it is that's being offered by the plaintiff here. Counsel, can't this case be reduced to a single sentence? Mastermind is descriptive when it comes to judges, but suggestive when it comes to musicians. And on that, I submit to your ruling, Your Honor. If there are no more questions, I'd like to end there. Thank you, Your Honor.
judges: Fernandez, Christen, Bennett